AO (Rev. 5/85) Criminal Complaint

# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

| UNITED STATES OF AMERICA | CRIMINAL COMPLAINT |
|---|---|
| vs. | CASE NUMBER: 8:13 MJ1461 MAP |
| KEOSHA RENEE JONES | |

I, the undersigned complainant, being duly sworn, state the following is true and correct to the best of my knowledge and belief.  From on or about December 16, 2012 to on or about January 6, 2013, in Pinellas County, in the Middle District of Florida, defendant did,

knowingly engage in the sex trafficking of children

in violation of Title 18, United States Code, Section 1591.  I further state that I am a Special Agent with the Federal Bureau of Investigation, and that this Complaint is based on the following facts:

SEE ATTACHED AFFIDAVIT

Continued on the attached sheet and made a part hereof:  ☒ Yes   ☐ No

Signature of Complainant
William B. Jones, Federal Bureau of Investigation

Sworn to before me and subscribed in my presence,

July 15, 2013                                     at        Tampa, Florida

MARK A. PIZZO
United States Magistrate Judge
Name & Title of Judicial Officer                            Signature of Judicial Officer

## AFFIDAVIT

Your affiant, William B. Jones, being sworn to tell the truth, states the following:

1. Your affiant has been employed as a Special Agent with the Federal Bureau of Investigation ("FBI") since June 25, 1995. Beginning February, 2010, to the present, your affiant has been assigned to the FBI Innocent Images Task Force, members of which investigate the sexual exploitation of children. Your affiant has been involved in numerous investigations relating to the exploitation of children, including offenses involving the dissemination of child pornography on the Internet via computer. Your affiant has attended specialized courses involving computers and child exploitation.

2. Your affiant is authorized to investigate violations of laws of the United States, and is a law enforcement officer with authority to execute arrest and search warrants issued under the authority of the United States.

3. The statements contained in this affidavit are based on your affiant's knowledge or information provided to your affiant by other law enforcement officers. This affidavit is being submitted in support of a complaint. Your affiant has not included each and every fact known to him concerning this investigation. Your affiant has set forth only the facts necessary to establish probable cause that violations of Title 18, United States Code, Section 1591 have been committed by Keosha Renee Jones.

4. In January 2013, the FBI was made aware of two minor victims, M.T. (14 years of age) and R.L. (14 years of age), who reported that from on or about December 16, 2012 to on or about January 6, 2013, they had been caused to engage in commercial sex acts at various locations throughout Pinellas County in the Middle District of Florida. M.T. had sustained injuries consistent with the commercial sex acts that she described as having performed.

5. M.T. and R.L. identified two perpetrators of the scheme, one of whom was Keosha Renee Jones. Both M.T. and R.L. positively identified Jones and her coconspirator in photographs used by law enforcement. One of the victims further described a tattoo on Jones' right leg of a flower and drew your affiant a picture of that flower. The victim's description of that tattoo and drawing of it match a flower tattoo depicted in a picture that Jones has posted on her Facebook account.

6. M.T. and R.L. explained to law enforcement how, over the course of several days in December 2012 and January 2013, Jones and her coconspirator took them to residences and a hotel in Pinellas County, where M.T. and R.L. were caused to

1

engage in commercial sex acts. M.T. and R.L. were required to turn over the proceeds of the sex acts to Jones and her coconspirator.

7. On the first day that Jones met the minor victims, Jones called a taxi to have the victims picked up and brought to the Bayway Inn in St. Petersburg. The commercial sex acts began shortly thereafter. One of the victims reported fearing that Jones would kill them if they did not make money, and Jones' coconspirator had said, "Money is money and money before everything."

8. On the first day, the victims took showers and then Jones received a phone call from an unknown male. When the male arrived at the hotel, the victims met him in one of the hotel rooms. The male proceeded to have sexual intercourse with one of the minor victims, then the other, and finally, with Jones; he paid them $100 each, and Jones kept all of the money.

9. The victims' interaction with this male on the first day was typical of their other days at the hotel. On most days, M.T. and R.L. would wait until Jones received a phone call from a potential customer. When Jones received a call, M.T. or R.L would typically meet with the customer at a nearby gas station and then come back to the hotel to perform the sex act. These meetings would occur approximately twice a day, with M.T. and R.L receiving $100 for sexual intercourse and $50 for performing oral sex.

10. While at the hotel, the victims stayed in several different rooms. M.T. and R.L. did not keep any of the money from the commercial sex acts. Rather, the victims would turn over the money to Jones, who then – along with her coconspirator – used the money to buy the victims clothes and food, as well as pay for the rooms.

11. As part of the investigation, the FBI interviewed a maid from the Bayway Inn. The maid reviewed photographs of the minor victims and recalled seeing one of them at the hotel. The maid recalled relocating that victim from room 221 to room 223 at one point while the victim had been staying at the hotel. Room 221 is one of the rooms that the victims reported staying in.

12. The FBI has also obtained records from the Bayway Inn as part of this investigation. One of those records shows that room 221 was signed for on December 20, 2012 by a "Sakia Cooper" who provided a contact telephone number of 727-320-2564.

13. In the course of this investigation, the FBI has learned that the subscriber of telephone number 727-320-2564 is a "Pretty Blaugue," who resides at xxxx 42nd Street South, St. Petersburg, FL 33711. "Pretty Blaugue" is similar to Jones' nickname of "Pretty Black." Moreover, the address for this subscriber matches Jones' address in a 2011 St. Petersburg Police Department report.

14. Furthermore, one of the victims reported to the FBI that Jones had provided her with a wireless telephone in order to arrange for the commercial sex acts (the other victim received a wireless telephone from a third-party). M.T. and R.L. provided the FBI with those wireless telephones and consented to searches of those phones. The telephone used by one of the victims listed Jones and her coconspirator as contacts, with Jones identified as "Keosha" and as having phone number 727-320-2564.

15. The FBI has obtained an internet advertisement from www.backpage.com, which is a website known to law enforcement to be used by others to solicit and arrange for commercial sex acts. This particular advertisement that the FBI obtained showed nude images of M.T. and R.L., and the advertisement stated: "Two Ebony Princessess [sic] that like to live, laugh, love and have fun in any way u want. Kissing & flip-side entry are not an option. All else is fair in love & war. Only serious Gentlemen need apply. Disrespect of any sort will not b [sic] tolerated. 727-320-2564 (incalls only)."

16. In order to place an advertisement on www.backpage.com, a person must register via the internet and provide, among other things, an email address. Respondents to an advertisement on the website may choose to respond via email to the registrant's email address.

17. The FBI has determined that the aforementioned advertisement had been posted on to the internet on December 20, 2012 from IP address 65.32.171.59, which has subsequently been traced to an individual who is now a cooperating witness and who appears as a contact of Jones' on Facebook.

18. According to the cooperating witness, Jones requested to use his computer to post the advertisement on www.backpage.com. The cooperating witness used his neighbor's open wireless network to access the internet. Jones connected her wireless telephone to the cooperating witness' computer and then uploaded the photograph from her telephone to www.backpage.com. Jones then requested to use the cooperating witness' debit card to pay for the advertisement. She paid the cooperating witness back in cash several days later. After the advertisement had been posted, the cooperating witness drove Jones to the Bayway Inn.

19. Bank statements for the cooperating witness show the charge from www.backpage.com. Also, internet logs show that the cooperating witness was connected to the aforementioned IP address, which belonged to his neighbor, during the relevant period.

20. The person who posted the advertisement on December 20 provided a telephone number of 727-320-2564 and an email address of keoshajones@hotmail.com. For the reasons stated previously in this affidavit, that telephone number matches the

3

number believed to have been used by Jones. Also, the FBI has obtained records from the email account of keoshajones@hotmail.com. That account contained an email confirming the registration of the advertisement on www.backpage.com. The subscriber of the email account was identified as Keosha Jones, living in Florida within zip code 33711.

21. In addition, subscriber information obtained from the Facebook account of keoshajones.37 shows that the user of that account registered an email address of keoshajones@hotmail.com. IP logs from February 2013 show the same wireless telephone accessing this email account and this Facebook account.

22. Phone records for the victims' phones and Jones' phone show that between December 16, 2012 and January 6, 2013, there were at least 57 communications between Jones and R.L. and at least 35 communications between Jones and M.T. Information obtained from cellular towers during this period shows the victims and Jones to have been near the locations at which the commercial sex acts took place. For instance, on the evening of December 20, 2012, R.L.'s telephone and Jones' telephone connected to cellular towers that were within one mile of the Bayway Inn. Also that evening, their telephones connected to cellular towers nearby the cooperating witness' residence.

23. Throughout M.T.'s and R.L.'s time with Jones, Jones was aware that they were younger than 18. The victims told Jones that they were 16. And, Jones observed a runaway flyer for the victims that showed their true ages as 14 years old. The flyer had been posted in a gas station near the Bayway Inn. Jones confronted M.T. and R.L. about their ages, and she directed them to take down their Facebook pages, because Jones knew that the police were looking for M.T. and R.L.

24. Jones' conduct was in or affected interstate commerce in that the aforementioned scheme involved means or facilities of interstate commerce, such as wireless telephones and the internet.

25. Based upon the foregoing, there is probable cause to believe that Keosha Renee Jones has violated Title 18, United States Code, Section 1591, which prohibits the sex trafficking of children. It is respectfully requested that a criminal complaint and arrest warrant be issued.

William B. Jones, Special Agent
Federal Bureau of Investigation

Sworn and subscribed before me this 15 day of July, 2013.

MARK A. PIZZO
UNITED STATES MAGISTRATE JUDGE